UNITED STATES v. BAKER et al.

(District Court, D. Maryland. July 11, 1917.)

1. ARMY AND NAVY ⊂⊃40—SELECTIVE DRAFT ACT—ATTEMPT TO SECURE RE-
PEAL.
    Every man has a perfect right to any opinion he may form about a pro-
posed or existing law, and he may do anything in itself legal to secure a
repeal of a law in force, using such arguments as commend themselves to
his reason and judgment, even though such law be the Selective Draft
Act (Act May 18, 1917, c. 15).

2. ARMY AND NAVY ⊂⊃40—OFFENSE—SELECTIVE DRAFT ACT.
    As long as a law is in force, it is the duty of every man to obey it;
hence any one, who, under pretense of arguing against the wisdom of the
Selective Draft Act or advocating its repeal, does anything with in-
tent to procure its violation, is guilty of an offense.

3. ARMY AND NAVY ⊂⊃40—OFFENSES—JURY QUESTION.
    In a prosecution for acts tending to induce violations of the Selective
Draft Act, the sole question for the jury is whether defendants, in any-
thing they did, intended to persuade those subject to the act not to com-
ply with its provisions; the questions whether their statements and ar-
guments were well founded being immaterial.

4. ARMY AND NAVY ⊂⊃40—OFFENSES—VIOLATIONS OF SELECTIVE DRAFT ACT.
    While it is an offense to urge a violation of law under cover of advo-
cating the principles of any political party, defendant's distribution of a
circular containing a lurid description of the horrors of war, stating that
conscription was upon the country and the Selective Draft Act a fact,
which further argued that if everybody had voted the Socialist ticket
there would have been no war, and ended with an appeal to subscribe
to a Socialist paper, does not show an attempt to induce those subject
thereto to violate the Selective Draft Act.

. Romanus E. Baker and Jacob M. Wilhide were indicted for the
offense of attempting to induce those subject to the Selective Draft
Act to disobey it. Defendants acquitted on directed verdict of not
guilty.

Samuel K. Dennis, U. S. Atty., and James A. Latane, Asst. U. S.
Atty., both of Baltimore, Md.

Frederick Haller, of Hagerstown, Md., and Charles B. Backman, of.
Baltimore, Md., for defendants.

On Ruling upon Admissibility of Testimony.

ROSE, District Judge. I might as well make perfectly clear what
I understand to be the issue in the case.

[1, 2] Every man has a perfect right to any opinion he may see fit
to form about any proposed law, or about any law that is on the stat-
ute books. Any man may do anything, in itself legal, to secure the re-
peal of any law in force. To that end he may make any argument
that commends itself to his reason and judgment against the policy of
any particular law, whether it be the law for a selective draft or any
other. And he is not answerable for the wisdom of his arguments.
He could not very well be put on trial even for the good faith of some
of them. I am afraid, if he could be, most of the political orators in
every campaign would be liable for much they say about the other

party. We all of us say more against our political opponents than we really believe. But there is one limit. As long as the law is the law, it is the duty of every man to obey it; and he may not, under color or pretense of arguing against the wisdom of the law, or of advocating its repeal, *do anything with intent to procure its violation.*

[3] Now, I have not seen these circulars that were distributed by the defendants. They may be wise or unwise, temperate or intemperate. I do not know a thing about them. But the one thing that the jury is to inquire into is not as to the wisdom or the lack of wisdom of any statements in those circulars, or their truthfulness or their fairness. That is not the question. The one sole question in the case is whether these men, in anything they did, intended to persuade men not to register under the draft, or, after they were registered, to persuade them not to obey the order to come to the colors. That is the one question. So the real inquiry here is : Can the government show, always beyond a reasonable doubt, that these men were trying to persuade people to disobey the law? Whether they approached candidates for enlistment, or persons within the age for enlistment, and made any statements to such persons which might naturally make such persons reluctant to obey the law, is one of the facts to be taken into consideration by the jury; but the jury cannot convict, unless they are satisfied, of course beyond a reasonable doubt, that these men were then engaged in doing something which they purposed and intended should prevent men within the military age from obeying the law. If the jury is satisfied beyond a reasonable doubt, then the case is made out. If they have any doubt about the purpose of these men, they must acquit them, however mis-taken the jury may happen to think they were about the policy of the law—however unfair or extravagant the jury may think their arguments against it were.

### At Conclusion of the Government's Case.

The Court: I do not think there is anything to go to the jury in this case.

[4] You may have your own opinions about that circular. I have very strong individual opinions about it, and as to the wisdom  and fairness of what is said there; but so far as I can see it is a circular principally intended to induce people to subscribe to a Socialist news-paper and to get recruits for the Socialist party. I do not think that we ought to attempt to prosecute people for that kind of thing. It may be very unwise in its effect, and it may have been unpatriotic at that particular time and place; but it would be going very far indeed, further, I think than any law that I know of would justify, to hold that there has been made out any case here, even tending to show that there was an attempt to persuade men not to obey the law.

There is a very lurid description of the horrors of war in that circu-lar—*some of it well written; some of it not so well written.* But, after all, there is no difference of opinion that war is a terrible catas-trophe, and involves many terrible things. The circular develops some sort of a theory, not very clearly argued out, that if everybody had voted the Socialist ticket there would have been no war. The circular

ends up with an appeal to subscribe to the Socialist paper for 50 cents a year, or 25 cents for every six months.

Mr. Latane: The side of it that appealed to the government was this, your honor. Of course, we are perfectly satisfied with your honor's determination of the matter; but, just in explanation, it starts out with the words, "Conscription is upon us and the draft law is a fact."

The Court: That I understand to be a fair and reasonable deduction that from their point of view it all could have been avoided if the people earlier had taken this Socialist paper and had voted the Socialist ticket.

Mr. Latane: The point that occurred to the government is this: These people are too clever to directly, in print, to attack the draft law; so, under guise of advocating the principles of the Socialist party, they give the whole draft proposition a very raw deal.

The Court: That is possible, but you must prove the intent beyond the possibility of a reasonable doubt.

Mr. Latane: All we want is to get some judicial determination of the matter.

The Court: The judicial determination of the matter is that in whatever form they put what they say or do, whether that of advocating the principles of any political party, Republican, Democratic, Prohibitionist, Socialist, or under any other guise whatsoever, it is an offense to do anything with the intent of bringing about a violation of the law; but the commission of that offense must be proved, the intent must be established by evidence which will justify a jury in holding that it was made out beyond a reasonable doubt, and in this case there is no such evidence.

Gentlemen of the jury, you have the instructions of the court to return a verdict of not guilty.